1  Timothy M. Freudenberger, State Bar No. 138257
   tfreud@cdflaborlaw.com
2  Nancy N. ("Niki") Lubrano, State Bar No. 263037
   nlubrano@cdflaborlaw.com
3  CAROTHERS DISANTE & FREUDENBERGER LLP
   2600 Michelson Drive
4  Suite 800
   Irvine, California 92612
5  Telephone: (949) 622-1661
   Facsimile: (949) 622-1669
6
   Attorneys for Defendant
7  JACK IN THE BOX INC.

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 KARTIK PATEL, on behalf of himself ) Case No. 16CV2561 H JLB
   and all others similarly situated,  )
12                                      ) Assigned for All Purposes To:
              Plaintiff,                ) Judge: Marilyn L. Huff
13        vs.                           ) Ctrm: 15A
                                        )
14 JACK IN THE BOX INC.,                ) **MEMORANDUM OF POINTS**
                                        ) **AND AUTHORITIES IN SUPPORT**
15            Defendant.                ) **OF DEFENDANT JACK IN THE**
                                        ) **BOX INC.'S, MOTION TO**
16                                      ) **COMPEL ARBITRATION AND**
                                        ) **DISMISS ACTION**
17                                      )
                                        )
18                                      )
                                        ) Date: December 12, 2016
19                                      ) Time: 10:30 a.m.
                                        ) Ctrm: 15A
20                                      )
                                        ) Action Filed:    October 13, 2016
21 _____ ) Trial Date:      None

22

23

24

25

26

27

28

CAROTHERS DISANTE &
FREUDENBERGER LLP

1148443.1

Memo of P's & A's ISO Motion to Compel
Arbitration and Dismiss Action
16CV2561 H JLB

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................... 2

    A. The Parties ................................................................................................... 2

    B. Procedural Background ............................................................................... 2

    C. Mutual Dispute Resolution Agreement ....................................................... 3

III. ARGUMENT .......................................................................................................... 3

    A. The Federal Arbitration Act Governs The Arbitration Agreement ............. 4

    B. Arbitration Agreements Are Strongly Favored and Broadly Construed ..... 5

    C. The Arbitration Agreement Is Valid And Enforceable ............................... 5

        1. Plaintiff cannot avoid his arbitration agreement by filing a putative class action complaint relating to his individual employment claims ........................................................ 6

        2. The NLRA does not shield Plaintiff from his obligation to arbitrate his individual claims .................................................. 7

        3. The DRA encompasses the claims asserted in the complaint ...................................................................................... 9

        4. The DRA is not unconcsionable .................................................... 10

            a. The DRA is not procedurally unconscionable ................... 10

            b. The DRA is not substantively unconscionable ................... 11

                (i) Neutral Arbitrator ................................................... 11

                (ii) No limitation of remedies ...................................... 11

                (iii) Adequate discovery ............................................... 11

                (iv) A written decision ................................................. 12

                (v) No additional costs to the employee unique to arbitration ............................................................. 12

        5. Any unconscionable provision may be severed to preserve the enforceability of the DRA ............................................ 13

IV. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199 (1998) ..................... 10

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ........................................ 4

*Armendariz v. Found. Health Pysch Servs., Inc.*, 24 Cal.4th 83 (2000) 10, 11, 12, 13

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .............................................. 5

*Chiron Cor. v. Ortho Diagnostic Sys. Inc.*, 207 F. 3d 1126 (9th Cir. 2000) ................ 3

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) ............................ 5, 6

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) .................................................... 4

*Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003) ...................................... 6

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951 (1997) ............................. 10

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312 (1983) .............................................................................................. 6

*Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal.App.4th 1276 (2007) ............................................................................................................................. 4, 5

*Ingle v Circuit City Stores, Inc.*, 328 F. 3d 1165 (9th Cir. 2003) ............................. 13

*Legatree v. Luce, Forward Hamilton & Scripps LLP*, 74 Cal.App.4th 1105 (1999) .............................................................................................................. 10

*Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125 (C.D. Cal. 2006) .................................... 11

*Merrick v. Writers Guild of America, West, Inc.*, 130 Cal.App.3d 212 (1982) .................................................................................................................................. 9

*Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016) ......................................... 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ..................................................................................................................................... 5

*N.L.R.B. v. Kentucky River Comm. Care Inc.*, 532 U.S. 706 (2001) ......................... 8

*Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal.App.4th 1115 (2012) ..................................................................................................................................... 4

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.4th 223 (2012) ........................................................................................ 10

*Roman v. Superior Court (Flo-Kem)*, 172 Cal. App. 4th 1462 (2009) .................... 11

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Southland Corp.* v. *Keating,* 465 U.S. 1, 10 (1984) .................................................... 13

*United Transportation Union v. So. Cal. Rapid Transit,* 7 Cal.App.4th
    804 (1992) ............................................................................................................. 9

*Watkins v. Wachovia Corp.,* 172 Cal. App. 4th 1576 (2009) ........................................ 6

**Statutes**

29 U.S.C. § 152(11) ........................................................................................................ 8

29 U.S.C. § 152(3) .......................................................................................................... 7

29 U.S.C. § 157 ............................................................................................................... 7

9 U.S.C. §2 ...................................................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is Plaintiff's counsel's second attempt to pursue a wage and hour class action lawsuit against Defendant Jack in the Box Inc. ("JIB") based on the theory that JIB misclassified its Restaurant Managers as exempt. Counsel's last attempt, which was made in State court, was unsuccessful and that court correctly enforced the arbitration agreement executed by the parties.[1] The same result is warranted here. Indeed, JIB's Dispute Resolution Agreement is valid, binding, and enforceable requiring that Plaintiff arbitrate his individual claims. Apparently, since Plaintiff's counsel was not successful in State court, they decided to take their chances in Federal Court. However, the law requires enforcement of JIB's arbitration agreement here also. Recent case law does not change that result.

During his employment, Plaintiff Kartik Patel ("Plaintiff") entered into a Dispute Resolution Agreement ("DRA") with JIB wherein he agreed to arbitrate any disputes or claims in any way related to his employment or termination thereof in accordance with the employment rules of the American Arbitration Association ("AAA"). Notwithstanding his agreement to arbitrate, Plaintiff filed a Class Action Complaint ("Complaint") against JIB, thereby commencing this Action in which he alleges he was misclassified as an exempt employee and, as a result, JIB failed to provide meal and rest periods, failed to pay minimum and straight time wages, failed to pay overtime and double time compensation, failed to timely pay wages upon termination, failed to reimburse for business expenses, failed to provide accurate wage statements, and engaged in unfair business practices.

JIB moves to compel Plaintiff to arbitrate his claims because the DRA he

---

[1] That matter, initially filed in the Los Angeles Superior Court, is now pending in arbitration. Additionally, since Plaintiff filed this action, his counsel commenced a third misclassification matter against JIB, which they are pursuing on an individual basis.

entered into with JIB specifically covers the allegations, disputes, and claims set forth in Plaintiff's Complaint. Pursuant to the DRA, Plaintiff agreed to arbitrate all of the claims alleged in this action. Controlling federal and state authorities establish that the agreement to arbitrate is a valid and enforceable contract mandating that Plaintiff be compelled to arbitrate his claims. Accordingly, for the reasons stated herein, JIB requests that Plaintiff be compelled to arbitrate his claims and that this action be dismissed.

## II. BACKGROUND

### A. The Parties

JIB is a restaurant chain that provides food to thousands of guests every day nationwide. To remain competitive, JIB strives to provide its customers with fresh food fast. Plaintiff was originally hired by JIB in 1990. He held several positions with JIB and was eventually promoted to a Restaurant Manager. Plaintiff worked as a Restaurant Manager for JIB from 2001 until he commenced a leave of absence on March 7, 2016. As a Restaurant Manager, Plaintiff was responsible for managing the overall operations of his restaurant, which included hiring and firing, promoting and disciplining, and the use of independent judgment and discretion with accountability for the operation of the restaurant. Declaration of Susan ("Pettijohn Decl.") filed concurrently herewith, ¶ 4, Exh. 1.

### B. Procedural Background

On October 13, 2016, Plaintiff filed the instant action wherein he alleges that he was misclassified as an exempt employee resulting in JIB's (1) failure to pay overtime in violation of the Fair Labor Standards Act, (2) failure to provide/authorize and permit meal and rest breaks in violation of the California Labor Code, (3) failure to pay for all hours worked in violation of the California Labor Code, (4) failure to pay minimum wage in violation of the California Labor Code, (5), failure to pay overtime in violation of the California Labor Code, (6) failure to provide itemized wage statements in violation of the California Labor Code, (7) waiting time penalties

in violation of the California Labor Code, (8) failure to reimburse for expenses in violation of the California Labor Code, and (9) unfair business practices in violation of the California Business and Professions code.

On November 2, 2016, counsel for JIB contacted Plaintiff's counsel to request that Plaintiff stipulate to arbitration pursuant to the DRA in an effort to avoid unnecessary law and motion. Declaration of Nancy Lubrano ("Lubrano Decl.") filed concurrently herewith, ¶ 2, Exh. 1. Plaintiff refused to stipulate. *Id.*

### C. Mutual Dispute Resolution Agreement

Plaintiff's tenure with JIB has spanned many years. During Plaintiff's employment, JIB implemented a DRA and on March 11, 2004, Plaintiff executed JIB's DRA. Pettijohn Decl., ¶ 5 Exh. 2. At the time Plaintiff executed the DRA, he was provided with his own copy. *Id.*

According to the DRA, Plaintiff must resolve his claims in binding arbitration:

> **Mutual Promise to Resolve Claims by Binding Arbitration**
> In signing the Acknowledgment and Receipt, both the Company and the Employee agree that all claims or disputes covered by this Agreement must be submitted to binding arbitration, and that this binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute. This promise to resolve claims by arbitration is equally binding upon the Company and the Employee.

Pettijohn Decl., ¶ 5, Exh. 2, p. 1.

## III. ARGUMENT

To compel arbitration, JIB need only establish (1) a dispute between the parties exists, (2) a written arbitration agreement covers the dispute, (3) the transaction evidenced by the agreement involves interstate or foreign commerce; and (4) the failure, neglect, or refusal of the other contracting party to arbitrate the dispute. *Chiron Cor. v. Ortho Diagnostic Sys. Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000). As set forth below, JIB has met is burden.

///

///

///

A.   **The Federal Arbitration Act Governs The Arbitration Agreement.**

The Federal Arbitration Act ("FAA") provides that arbitration agreements included in contracts evidencing a transaction involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2.  In deciding FAA coverage, "[the court] must broadly construe the phrase, 'evidencing a transaction involving commerce,' because the FAA 'embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause . . . In determining whether the employment agreement involved interstate commerce, the parties' subjective intent is not the determining factor." *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal.App.4th 1276, 1286 (2007) (referencing 9 U.S.C. §2). "'[E]videncing a transaction involving commerce' (9 U.S.C. §2) simply means that 'the "transaction" in fact "involv[ed]" interstate commerce, even if the parties did not contemplate an interstate commerce connection.'" *Id. citing Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) (FAA applied to a contract for local termite control services because Terminix used materials which came from outside the state.)  The "term 'involving commerce' in the FAA" has been interpreted "as the functional equivalent of the more familiar term 'affecting commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 123 (2003).  In *Alafabco* the United States Supreme Court not only concluded that the FAA "encompasses a wider range of transactions than those actually 'in commerce,'" it also determined that the FAA applies to an individual transaction even if the transaction does not have a substantial effect on interstate commerce so long as "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* (citation omitted).  *See Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal.App.4th 1115, 1123-24 (2012) (applying FAA to arbitration agreement between a California residential property manager and his nationwide property management employer).

Here, JIB is engaged in interstate commerce within the meaning of the FAA. JIB has restaurants located in multiple states. Pettijohn Decl. ¶ 6. JIB buys inventory and goods from different states. *Id.* JIB employs people from different states. JIB sells its products to people from different states. *Id.* Thus, the DRA is part of an employment relationship that is involved with interstate commerce. *See* Pettijohn Decl., ¶ 5 and Exh. 2 thereto at p. 2, ¶1 ("This Agreement is made subject to the Federal Arbitration Act, which governs because Company is engaged in interstate commerce.").

B.   **Arbitration Agreements Are Strongly Favored and Broadly Construed**

Congress enacted the FAA in 1925 in response to "widespread judicial hostility" at the time toward arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011). "The overreaching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748. Indeed, the Supreme Court has described the FAA as "'embodying a national policy favoring arbitration' and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Id.* at 1749. As such, "'[t]he [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Consistent with the strong federal policy favoring arbitration, Supreme Court cases "place it beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 563 U.S. at 345.

C.   **The Arbitration Agreement Is Valid And Enforceable.**

Courts look to state law contract principles to determine whether a valid agreement to arbitrate exists. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002); *Guiliano*, 149 Cal.App.4th at 1284. Here, the Plaintiff received,

acknowledged, and consented to the DRA. Pettijohn Decl., ¶ 5, Exh. 2. The DRA is supported by adequate consideration in the form of the parties' mutual agreement to be bound by the DRA. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's promise to be bound serves as adequate consideration). Accordingly, with offer, acceptance and consideration, a valid agreement to arbitrate exists between the Plaintiff and JIB.

### 1. Plaintiff cannot avoid his arbitration agreement by filing a putative class action complaint relating to his individual employment claims.

Consistent with the public policies favoring arbitration, the California Supreme Court has warned against "procedural gamesmanship" aimed at undermining the advantages of arbitration. *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 323 (1983). Plaintiff cannot sidestep his own arbitration agreement by filing a class action complaint. *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 320 (2003) ("[I]n light of the United States Supreme Court's strong presumption in favor of enforcing arbitration agreements . . . a party to an arbitration agreement [cannot] evade [his] contractual obligation to settle [his] own . . . claims through arbitration merely by acting as a representative on behalf of other similarly situated claimants.") ***Plaintiff is attempting to do precisely what courts expressly prohibit—namely, evade the terms of his own contractual agreement to arbitrate by suing in civil court on the exact claims he agreed to arbitrate and doing so as a representative on behalf of other similarly situated claimants.*** This patent attempt at an end-run around his own arbitration agreement should be summarily rejected. Plaintiff has no "class claim" that can be asserted independent of his individual claims because a "class claim" is not an additional claim for relief. *See Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1590 (2009) (holding voluntary settlement of class representative's claim mooted right to proceed on appeal with "class claim" because representative plaintiff still possessed only a single claim for relief). ***Plaintiff explicitly waived the right to bring or join any type of collective or class***

*claim in arbitration.* (Pettijohn Decl., ¶ 5, Exh. 2, p. 2). Thus, Plaintiff's *individual* claims should be compelled to arbitration, per his arbitration agreement.

### 2. The NLRA does not shield Plaintiff from his obligation to arbitrate his individual claims.

Plaintiff intends to argue that the class action waiver is unenforceable pursuant to *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016) *cert. filed* September 8, 2016; Lubrano Decl. ¶ 2 Exh. 1. Plaintiff's reliance on *Morris* is misplaced. There, the employees alleged they were misclassified as exempt and sought to recover overtime wages for themselves and others similarly situated. As a condition of employment they signed arbitration agreements containing a class action wavier. The Ninth Circuit vacated the District Court's order compelling employees to arbitrate their individual claims. The Ninth Circuit held that the employer's class action waiver violated the National Labor Relations Act (the "NLRA") because it interfered with the employees' right to engage in concerted activity, which concerted activity includes class action proceedings. *Morris*, 834 F.3d at 980.

Section 7 of the NLRA states that employees have the right to engage in concerted activities and defines "employee" as:

> The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, ***but shall not include . . . any individual employed as a supervisor.***

29 U.S.C. § 157 and § 152(3). The term "supervisor" means:

> [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). It is well settled that possession of any one of the authorities listed in section 152(11) places the employee invested with such authority in a supervisory class. *N.L.R.B. v. Kentucky River Comm. Care Inc.*, 532 U.S. 706, 713 (2001). Notably, the Ninth Circuit did not reach the issue of whether the Ernst & Young plaintiffs were covered employees under the NLRA because that issue was raised for the first time on appeal and therefore waived. Here, however, it is indisputable that the Plaintiff is ***not*** covered under the NLRA because of his supervisory status and cannot escape his obligation to arbitrate. In short, *Morris* is inapplicable here.

   Plaintiff is a Restaurant Manager for JIB and his duties fall squarely within the NLRA's definition of supervisor. Plaintiff and all other Restaurant Managers are responsible for the overall operation of the restaurant they manage. Declaration of Greg Kopczyk ¶ 3; S. Pettijohn Decl. ¶ 4. Exh. 1. Restaurant managers are required to use discretion and independent judgment and act in the interests of the company. *Id.* Restaurant Managers are required to supervise all restaurant employees and direct them in the performance of their duties. *Id.* Restaurant Managers are required to schedule and assign work and change work assignments as needed depending on the business needs. *Id.* They are required to coach, train and discipline employees, including termination of employees if necessary. *Id.* They are required to prepare and conduct employee performance evaluations. *Id.* They are required to respond to employee complaints, questions, and concerns. *Id.* They also are also required to identify, evaluate, and train employees for potential management positions. *Id.* They must motivate and inspire employees to achieve high performance. *Id.* Plaintiff performed all of these duties since at least 2012 as is expected of all of JIB's Restaurant Managers. *Id.* Accordingly, Plaintiff is a supervisor under the NLRA. *N.L.R.B.*, 532 U.S. *at* 713 ("Employees are statutory "supervisors" excluded from protections of the NLRA if: (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their exercise of such authority is not of a merely

routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held in the interest of the employer.") Consequently, the class action waiver included in Plaintiff's DRA is not protected concerted activity and he must arbitrate his claims.

### 3. The DRA encompasses the claims asserted in the complaint.

Where the controversy has its roots in the relationship between the parties which was created by the arbitration agreement, the controversy is subject to arbitration. *Merrick v. Writers Guild of America, West, Inc.,* 130 Cal.App.3d 212, 219-20 (1982). This is true regardless of whether the causes of action asserted are grounded in tort or contract. *Id.* Broad contractual provisions for arbitration are to be liberally construed. *United Transportation Union v. So. Cal. Rapid Transit,* 7 Cal.App.4th 804, 808 (1992).

In this case, the DRA is very broadly written with respect to the allegations, disputes, and claims that it covers.

> **Claims Covered by the Agreement**
> This Agreement applies to the following allegations, disputes and claims for relief Employee may presently or in the future have against the Company or against its officers, directors, employees, or agents in any way related to Employee's employment or termination of employment . . . the Fair Labor Standards Act . . . compensation disputes including wages, overtime, penalties, bonus payments and benefits . . . or any other statutory and common law claims under any law of the United States or State or local agency

Pettijohn Decl., ¶ 5, Exh. 2, p. 1. The Complaint alleges that Plaintiff was misclassified as an exempt employee and various Fair Labor Standards Act and Labor Code violations. Thus, all of Plaintiff's claims arise from and relate to his employment, they all fall within the undisputed scope of the DRA and must be compelled to arbitration. Consequently, the Court should order the parties to arbitration unless it is clear that the arbitration clause cannot be interpreted to cover the controversy. *United Transportation Union,* 7 Cal.App.4th 808.

4. **The DRA is not unconcsionable.**

Simply put, Plaintiff cannot invalidate the DRA. "[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts [such as fraud, duress, or unconscionability]."
*Armendariz v. Found. Health Pysch Servs., Inc.*, 24 Cal.4th 83, 98 (2000). Thus, in order to evade his agreement to arbitrate, ***Plaintiff bears the burden*** of proving that the DRA is unconscionable, that he was fraudulently induced into agreeing to its terms, or that the agreement was made under duress. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 972 (1997) (emphasis added). Plaintiff cannot meet that burden.

"[U]nconscionability has both a procedural and a substantive element. . . . The procedural element focuses on the unequal bargaining positions and hidden terms common in the context of adhesion contracts. . . . While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms . . . ." *Legatree v. Luce, Forward Hamilton & Scripps LLP*, 74 Cal.App.4th 1105 (1999) *quoting 24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199 (1998). "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.4th 223, 247 (2012). Only those agreements *permeated* by unconscionability should be denied enforcement. *See Armendariz*, 24 Cal.4th at 122 (emphasis added).

a. **The DRA is not procedurally unconscionable.**

There was no procedural unconscionability in making the DRA that would render it unenforceable. Further, the DRA is far from oppressive or surprising. *Armendariz*, 24 Cal.4th at 114 (the procedural unconscionability element focuses on oppression and surprise.) Rather, the DRA is a stand-alone, 6-page document, written in plain English and titled "**JACK IN THE BOX DISPUTE RESOLUTION AGREEMENT.**"

Even if Plaintiff were to characterize the DRA as a contract of adhesion, that alone would not render it unconscionable. *See Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1130-1132 (C.D. Cal. 2006) (upholding enforceability of arbitration agreement presented on a take it or leave it basis as part of plaintiff's employment); *see also Roman v. Superior Court (Flo-Kem)*, 172 Cal. App. 4th 1462, 1471 n.2 (2009) (particularly in the employment context, "[t]he adhesive nature of the contract will not always make it procedurally unconscionable.")

### b. The DRA is not substantively unconscionable.

In *Armendariz*, the California Supreme Court determined that arbitration agreements covering statutory or non-waivable rights are enforceable if they provide the following minimum protections: (1) a neutral arbitrator, (2) no limitation of remedies, (3) adequate discovery, (4) a written decision, and (5) no additional costs to the employee unique to arbitration. *Armendariz*, 24 Cal. 4th at 103. The DRA satisfies all of these requirements.

#### (i) Neutral Arbitrator

The DRA provides that the arbitrator(s) selected shall be from the American Arbitration Association, which arbitration rules require a neutral arbitrator. Pettijohn Decl., ¶ 5, Exh. 2, p. 4.

#### (ii) No limitation of remedies

Here, the DRA expressly provides that it does not destroy any of the Plaintiff's legal rights or remedies. Pettijohn Decl., ¶ 5, Exh. 2, p. 5.

#### (iii) Adequate discovery

Adequate discovery means that employees must be entitled to at least "discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)." *Armendariz*, 24 Cal. 4th at 106. In this case, the DRA expressly provides that each party shall have the right and opportunity to (1) take depositions of fact witnesses and expert witnesses, (2) obtain documents from the other side

through requests for production of documents; and (3) obtain information from the other side through the use of interrogatories and requests for admission. Pettijohn Decl., Exh. 2 at p. 3. Each party shall also have the right to subpoena witnesses and documents for the arbitration. *Id.* In addition, the arbitrator shall order such discovery as the arbitrator considers necessary to a full and fair exploration of the issues in dispute. *Id.* Accordingly, the DRA provides for adequate discovery sufficient to allow Plaintiff to arbitrate his claims.

(iv)   **A written decision**

The DRA expressly provides that the arbitrator will issue a final and binding written decision that "shall set forth a summary of the claim(s), the factual basis and legal principles for the decision, and the award, if any, and the damages or other relief granted, if any," Pettijohn Decl., ¶ 5, Exh. 2 at p. 4, "Selection and Power of Arbitrator." Thus, the DRA provides for a written arbitration decision that reveals the essential findings and conclusions on which the award is based.

(v)   **No additional costs to the employee unique to arbitration**

The DRA provides that JIB and not Plaintiff will pay those costs that are unique to arbitration. According to the DRA, Plaintiff will only pay that portion of the arbitration fee that is "equal to the lower of the fee for filing a lawsuit in the state or federal court in the jurisdiction where the arbitration claim is filed." Pettijohn Decl., ¶ 5, Exh. 2 at p. 5, "Arbitration Fees and Costs." Thus, the DRA does not require Plaintiff to pay any more costs than he would if he were to litigate this action in court.

As each of the standards set forth in *Armendariz* has been met, this action must be compelled to arbitration.

///

### 5. Any unconscionable provision may be severed to preserve the enforceability of the DRA

As set forth above, the DRA is substantively conscionable. However, even assuming *arguendo* any provision were to be deemed unconscionable, this Court has the authority to sever that provision to preserve the enforceability of the remainder of the Arbitration Agreement. *Armendariz*, 24 Cal. 4th at 124. Severing such a provision, if any, is consistent with and furthers the well-established policy under the FAA favoring arbitration as a means of resolving disputes. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Ingle v Circuit City Stores, Inc.*, 328 F. 3d 1165, 1180 (9th Cir. 2003). Severing any such provision is also consistent with the express terms of the DRA, which states that "The provisions of this Agreement are severable and independent, and the invalidity, illegality or unenforceability of any provision herein shall not affect the validity, legality or enforceability of the remaining provisions of this Agreement." Pettijohn Decl., ¶ 5, Exh. 2, p. 6.

## IV. CONCLUSION

For the foregoing reasons, JIB is entitled to, and respectfully requests, an Order compelling arbitration and dismissing this action.


Dated: November 10, 2016      CAROTHERS DISANTE & FREUDENBERGER LLP
                              Timothy M. Freudenberger
                              Nancy N. Lubrano


                              By: s/Timothy M. Freudenberger
                                  Timothy M. Freudenberger
                                  Attorneys for Defendant JACK IN THE BOX INC.
                                  E-mail: tfreud@cdflaborlaw.com